UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LIPTON LAW CENTER, P.C.,

        Plaintiff,

v.

        Case No. 22-cv-11519
        Honorable Linda V. Parker

ANDRUS WAGSTAFF, P.C.,

        Defendant.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This lawsuit arises from an agreement between Defendant Andrus Wagstaff, P.C. ("Wagstaff") and Plaintiff Lipton Law Center, P.C. ("Lipton Law"). Pursuant to that agreement, Lipton Law served as Wagstaff's local counsel in litigation related to Lawrence Nassar, a physician who sexually abused numerous athletes under the guise of providing medical care. Claiming that it is owed more for its services than it has been paid, Lipton Law initiated this action asserting the following counts: (I) breach of contract; (II) demand for accounting; (III) statutory conversion under Michigan Compiled Laws § 600.2919a; (IV) common law conversion; and (V) unjust enrichment/quantum meruit. (*See* ECF No. 10.) The matter is presently before the Court on Wagstaff's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c), which has been fully briefed.

(ECF Nos. 34, 36, 37.)  Finding the facts and legal arguments adequately presented in the parties' filings, the Court is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).

## I.     Summary Judgment Standard

Summary judgment pursuant to Rule 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant meets this burden, "[t]he party opposing the motion must show that 'there is a genuine issue for trial' by pointing to evidence on which 'a reasonable jury could return a verdict' for that party."  *Smith v. City of Toledo*, 13 F.4th 508, 514 (6th Cir. 2021) (quoting *Liberty Lobby*, 477 U.S. at 248).  The non-movant's evidence generally must be accepted as true and "all justifiable inferences" must be drawn in the non-movant's favor.  *Liberty Lobby*, 477 U.S. at 255.

II. **Factual Background**

Wagstaff is a Colorado law firm. (ECF No. 10 at PageID. 108, ¶ 8.) It represented individuals who were sexually abused by Nassar, a physician employed at one time by Michigan State University ("MSU"). (ECF No. 34-1 at PageID. 490, ¶ 2.) Wagstaff intended to file lawsuits on behalf of several victims in Michigan courts against Nassar, MSU, and organizations affiliated with Nassar and/or his victims during the sexual abuse, which included USA Gymnastics ("USAG").

Kimberly Dougherty, a lawyer associated with Wagstaff, needed an attorney to act as local counsel with respect to the Michigan lawsuits, as she is not licensed in Michigan. Dougherty had met Marc Lipton of Lipton Law when the two were involved in multi-district litigation. (ECF No. 36-2 at PageID. 559, ¶ 1.) Lipton Law is a Michigan law firm.

The agreement between Wagstaff and Lipton Law (hereafter "Local Counsel Agreement") was formed in a series of emails between Dougherty and Lipton on May 31, 2018. (ECF No. 36-3.) In those emails, Dougherty and Lipton wrote:

> Dougherty: "Should we need local counsel on the MSU/Nassar cases, do you have any interest in assisting. No heavy lifting. I'll handle everything, but need a MI barred atty for filing and getting me admitted PVH [sic] [pro hac vice]. Thoughts?"
>
> Lipton: "Absolutely. Thanks."

3

| | |
|---|---|
| Dougherty: | "Great! What's local counsel fee you would seek? Thanks!" |
| Lipton: | "What's reasonable? 10%?" |
| Dougherty: | "I was thinking 5% because there would literally be nothing you would need to do other then file and get me admitted and the process will mostly be administrative as opposed to litigation. So is 5% of the net attorneys' fees good with you?" |
| Lipton: | "Sure; if we end up doing more than that, we will adjust. Deal?" |
| Dougherty: | "Sounds good, thanks!" |

(*Id*.) Dougherty subsequently prepared a complaint on behalf of 22 Jane Doe plaintiffs against MSU, the MSU Board of Trustees, Nassar, USAG, the United States Olympic Committee ("USOC"), Twistars USA, Inc., and several individuals associated with these entities which was filed in the District Court for the Western District of Michigan.[1] *See* Compl., *Jane L.B. Doe, et al. v. Mich. State Univ., et al.*, No. 18-cv-00987 (W.D. Mich. Aug. 31, 2018), ECF No. 1 ("Michigan Action").

---

[1] Lipton states in his affidavit that he filed 20 Wagstaff cases, and that the claims against MSU were filed in the court of claims and the claims against the remaining defendants were filed in the Western District of Michigan. (*See* ECF No. 36-2 at PageID. 560, ¶¶ 13-15.) A search of the Case Management Electronic Filing System for the District Court for the Western District of Michigan, however, reflects only the one Nassar-related case discussed *infra* listing Lipton Law or one of its lawyers as counsel, and that case was filed on behalf of 22 plaintiffs against MSU and others. The number of cases is not dispositive here, however.

Several lawyers were listed on and signed the complaint filed in the Michigan Action, including Lipton and another Lipton Law attorney. *See id*. Lipton Law thereafter sponsored Dougherty's pro hac vice application.

On December 5, 2018, USAG filed for bankruptcy in the Bankruptcy Court for the Southern District of Indiana ("Bankruptcy Action"). *See* Notice, *id.* (filed Dec. 6, 2018), ECF No. 281. In accordance with the United States Bankruptcy Code, 11 U.S.C. § 362, the Michigan Action was stayed only as to USAG, initially, *see* Order, *id.* (filed Dec. 10, 2018), ECF No. 315, but was later stayed as to all defendants but MSU, its Board of Trustees, and the named defendants other than Nassar who are or were affiliated with MSU (collectively "MSU Defendants") *see* Order, *id.* (filed Nov. 25, 2020), ECF No. 1149.[2]

According to Lipton, he and Dougherty anticipated that the defendants in the Michigan Action, other than the MSU Defendants, would seek bankruptcy protection—just as the defendants did in the unrelated MDL litigation where they first became acquainted—and that the Michigan Action would then be stayed.

---

[2] The MSU Defendants, as referred to in the Michigan Action were: MSU; its Board of Trustees; William D. Strampel, D.O, who was the Dean of MSU's College of Osteopathic Medicine; Jeffrey R. Kovan, D.O., the Director of the MSU Sports Medicine Clinic; Douglas Dietzel, D.O., the Clinical Director of the MSU Sports Medicine Clinic and Team Orthopedic Surgeon for MSU's Department of Intercollegiate Athletics; Gary Stollak, Ph.D., MSU clinical psychologist and a professor of psychology; Kathie Klages, Head Coach of MSU's gymnastics team and program; and Destiny Teachnor-Hauk, an MSU athletic trainer.

(ECF No. 36-2 at PageID. 560, ¶¶ 11, 12.) Lipton further indicates that there was no expectation that any clients would be deposed or undergo any traditional discovery. (*Id.* ¶ 11.) Lipton suggests that these expectations are what led to Dougherty's prediction that Lipton Law's role would be limited and administrative. (*Id.*) According to Lipton, the Local Counsel Agreement "intentionally was not limited to any court, or any venue, as these types of cases can be affected by Bankruptcy jurisdiction, unless that jurisdiction is rejected." (*Id*. ¶ 12.)

Lipton nevertheless maintains that Lipton Law did more in the Michigan Action than file the complaint and move for Dougherty's admission, in that he attended meetings and conference calls, appeared and argued a motion at the courthouse in Grand Rapids which resulted in a "crucial" outcome, and received electronic notifications of all case filings. (*Id*. at PageID. 560-61, ¶¶ 16-18, 21.) Lipton claims that he suggested the facilitator for the Michigan Action—someone with whom Lipton and Lipton Law had a long-standing relationship—and strategized with Dougherty "on how to best approach" that individual. (*Id*. at PageID. 561 ¶ 20.) Lipton also received correspondence from USAG and was the attorney of record for the claimants on the creditor matrix in the Bankruptcy Action. (*Id*. ¶ 22.)

The claims against USAG were litigated in the Bankruptcy Action. (ECF No. 34-1 at PageID. 492, ¶ 12.) Dougherty was admitted pro hac vice in that

6

action.  (*Id.* at PageID. 510.)  Lipton Law did not appear in the Bankruptcy Action, was not admitted to practice in that court, and had no involvement in prosecuting the claims there.  (*Id*. at PageID. 492-93, ¶¶ 13.)  Rubin & Levin, P.C., an Indiana law firm, was appointed by the bankruptcy court in the Bankruptcy Action to serve as local counsel for the "Sexual Abuse Survivors' Committee," representing certain creditors of USAG, which included Wagstaff's clients.  (*See* ECF No. 34-1 at PageID. 519-21.)

On October 21, 2019, the claims against the MSU Defendants were settled through mediation in the Michigan Action.  (*Id*. at PageID. 492, ¶ 9.)  From January 21, 2020 through March 5, 2020, Wagstaff made five payments to Lipton Law, totaling $173,471.54, for Lipton Law's service as local counsel in the Michigan Action.  (*Id*. ¶ 10.)  This amount reflected "the agreed upon 5% of the attorney's fees, and a referral fee[.]"  (*Id*.)

In the Bankruptcy Action, a settlement eventually was negotiated for the creditors who were in the Sexual Abuse Survivors' Committee.  (*See id.* at PageID. 493, ¶¶ 15-16.)  Lipton Law was not paid any part of the attorney's share of the Gross Settlement Amount from the Bankruptcy Action.  (*Id*. ¶ 16.)  On June 7,

7

2022, Lipton emailed Dougherty inquiring, in part, about Lipton Law's local counsel fee from the bankruptcy distributions.[3] (ECF No. 36-7 at PageID. 703.)

Aimee Wagstaff responded:

> Andrus Wagstaff has already paid significant local counsel fees to your firm for the filing of these matters out of the MSU settlement. As you know, after the cases were filed in Michigan, fairly immediately USAG claimed bankruptcy and that litigation was transferred to bankruptcy court in Indiana. After that BK filing, no work was done by your firm in Michigan on the USAG matter. Rather, Kim and others lead [sic] the bankruptcy work in Indiana against USAG for the past several years without any assistance from your firm. Also, our firm filed all wave 2 cases in Colorado to protect these Women's' [sic] rights and we have not sought to obtain any of the fee for doing that work. Given the BK filing, its seems unfair for your firm to continue to collect local counsel fees on work that wasn't in MI and of which your firm did no work.
>
> Under these circumstances, we do not believe there are any additional fees owed to your firm. If I am mistaken about the work you all did after the BK or you think there is some fair hourly rate that your firm deserves for the initial filing that was not already covered by the MSU settlement payment made to your firm, please let us know.

(*Id.* at PageID. 701-02.) Lipton challenged this view in a subsequent email, arguing that "[Lipton Law] is entitled, per agreement, to a 5% local counsel fee on each attorney fee earned on behalf of the 22 clients for whom [Wagstaff] requested

---

[3] Lipton also asked if there was anything Lipton Law needed to do with respect to the Michigan Action and its dismissal. (ECF No. 36-7 at PageID. 703.) Dougherty responded: "We can assure you we will continue to handle the filings required with the WDMI in accordance with the bankruptcy order." (*Id*. at PageID. 702.)

that [Lipton Law] file suit . . . ." (*Id*. at PageID. 699-700.) Lipton further argued that Lipton Law had not been compensated for the work performed beyond filing the complaint and getting Dougherty admitted, "and should further action be necessary, . . . would seek compensation at [Lipton's] ordinary rate of $1500/hour." (*Id*. at PageID. 700.)

When Wagstaff continued to refuse paying Lipton Law more, Lipton Law filed this lawsuit.

### III. Applicable Law & Analysis

#### A. Breach of Contract

Under Michigan law, "[t]he primary goal in the construction or interpretation of any contract is to honor the intent of the parties." *Brown Jug, Inc. v. Cincinnati Ins. Co.*, 27 F.4th 398, 402 (6th Cir. 2022) (citing *Royal Prop. Grp., LLC v. Prime Ins. Syndicate, Inc.*, 706 N.W.2d 426, 432 (Mich. Ct. App. 2005)). "The best way to determine the parties' intent is to examine the ordinary and plain meaning of the language of the contract when read as a whole." *Id*. (citing *Royal Prop. Grp.*, 706 N.W.2d at 432). When a contract is unambiguous, a court must enforce its terms as written. *See Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir. 2007) (citing *St. Clair Med., P.C. v. Borgiel*, 715 N.W.2d 914, 918 (Mich. Ct. App. 2006); *Coates v. Bastian Bros., Inc.*, 741 N.W.2d 539, (Mich. Ct. App. 2007)). Extrinsic evidence may not be considered. *Sault Ste.*

*Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 373 (6th Cir. 1998) (citing *Mich. Chandelier Co. v. Morse*, 297 N.W. 64, 67 (Mich. 1941)).

Extrinsic evidence may be considered to interpret an ambiguous contract. *See id*. "A contract is ambiguous if 'its words may *reasonably* be understood in different ways.'" *Id.* (quoting *UAW-GM Human Res. Ctr. v. KSL Recreation Corp.*, 579 N.W.2d 411, 414 (Mich. Ct. App. 1998)). However, "the meaning of an ambiguous contract is a question of fact that must be decided by the jury." *Innovation Ventures, LLC v. Custom Nutrition Laboratories, LLC*, 912 F.3d 316, 339 (6th Cir. 2018) (quoting *Klapp v. United Ins. Grp. Agency, Inc.*, 663 N.W.2d 447, 453-54 (Mich. 2003)). This principle is "well settled[.]" *Klapp*, 663 N.W.2d at 453-54.

Pursuant to the parties' agreement, Wagstaff agreed to pay Lipton Law a "local counsel fee" of 5% "on the MSU/Nassar cases[.]" The agreement contemplated that Lipton Law's role would be limited to filing the action and getting Dougherty admitted. However, the amount would be "adjust[ed]" if Lipton Law "end[ed] up doing more than that[.]"

The determinative question is what the parties intended by a "local counsel fee" "on the MSU/Nassar cases." Did they mean only a percentage of the amounts awarded to the plaintiffs in the Michigan Action or also the amounts awarded to the plaintiffs as creditors in the separate "Bankruptcy Action." The parties' intent

10

cannot be gleaned from the plain language of their agreement. What the "MSU/Nassar cases" refers to is unclear.[4] There may be a common or customary practice among lawyers which could illuminate what the parties intended; however, the existence of such a practice or understanding is extrinsic evidence for the trier of fact to consider when interpreting the agreement. *See Klapp*, 663 N.W.2d at 469-70.

Wagstaff nevertheless argues that it would violate Rule 1.5(a) of the Michigan Rules of Professional Conduct to calculate the fees owed to Lipton Law based on the Bankruptcy Action in which Lipton Law played no role. (*See* ECF No. 34 at PageID. 476-77; ECF No. 37 at PageID. 908-09.) To support its argument, Wagstaff cites to cases finding a violation of professional ethics rules where a lawyer collects a fee and provided no service. (*Id.*) The Court finds none of these cases applicable or instructive in the context of the present matter.

Further, while Lipton Law did no work in the Bankruptcy Action, it did do work in the Michigan Action. In addition to filing the complaint and moving for Dougherty's pro hac vice admission, Lipton participated and argued at a hearing, provided guidance in connection with the facilitator, and remained listed as local

---

[4] Neither MSU nor Nassar were parties to the Bankruptcy Action, and thus one could argue that it technically was not an "MSU/Nassar case[]." However, the Michigan Action certainly was and USAG was named as a defendant. But for the bankruptcy, Lipton Law's local counsel fee in connection with the Michigan Action would have included any amounts recouped from USAG.

11

counsel throughout the proceedings. In that capacity, as one district court has observed, Lipton Law was "fully accountable to the court and [its] clients for the presentation of the case." *Gould, Inc. v. Mitsui Min. & Smelting Co.*, 738 F. Supp. 1121, 1125 (N.D. Ohio 1990) ("The Federal Rules of Civil Procedure and the Local Rules for the Northern District of Ohio do not recognize any lawyers as less than full advocates for their clients. The law makes no distinction, as to the liability of lawyers signing pleadings, between those who are self-designated 'lead' or 'local' counsel."). Absent the Michigan Action, Wagstaff's clients had no basis for being included in the Bankruptcy Action or as members of its Sexual Abuse Survivors' Committee or a right to a share of the settlement negotiated for the committee. In other words, Wagstaff's clients became creditors in the Bankruptcy Action and recovered a share of the funds recovered in those proceedings only because they filed their claims against USAG in the Michigan Action.

In short, the Court finds ambiguity in the Local Counsel Agreement which must be resolved by a jury. Thus, the Court concludes that Wagstaff is not entitled to summary judgment on Lipton Law's breach of contract claim (Count I).

**B.  Conversion**

Common law conversion "is established by showing 'any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein.'" *Nedschroef Detroit Corp. v. Bemas*

12

*Enterprises LLC*, 106 F. Supp. 3d 874, 886 (E.D. Mich. 2015) (quoting *Foremost Ins. Co. v. Allstate Ins. Co.*, 486 N.W.2d 600, 606 (Mich. 1992)). "Conversion may occur when a party properly in possession of property uses it in an improper way, for an improper purpose, or by delivering it without authorization to a third party." *Id.* (quoting *Dep't of Agric. v. Appletree Mktg. LLC*, 779 N.W.2d 237, 244-45 (Mich. 2010)). Michigan's conversion statute, Mich. Comp. Laws § 600.2919a, requires the same showing, along with proof "that the defendant had 'actual knowledge' of the converting activity." *Id.* (citing *Echelon Homes, LLC v. Carter Lumber Co.*, 694 N.W.2d 544, 547-78 (Mich. 2005)).

"The law in Michigan is well-settled that an action in tort requires a breach of duty separate and distinct from a breach of contract." *Brock v. Consol. Biomed. Labs.*, 817 F.2d 24, 25 (6th Cir. 1987) (citing *Haas v. Montgomery Ward & Co.*, 812 F.2d 1015 (6th Cir. 1987); *Kerwin v. Mass. Mut. Life Ins. Co.*, 295 N.W.2d 50 (Mich. 1980); *Hart v. Ludwig*, 79 N.W.2d 895 (Mich. 1957); *Brewster v. Martin Marietta Aluminum Sales, Inc.*, 378 N.W.2d 558 (Mich. Ct. App. 1985)). If the plaintiff's cause of action arises from the breach of a contractual duty, the appropriate claims is in contract, not tort. *See Rinaldo's Constr. Corp. v. Mich. Bell Tel. Co.*, 559 N.W.2d 647, 657-58 (Mich. 1997); *Brewster*, 378 N.W.2d at 569; *Hart*, 79 N.W.2d at 897. Despite recognizing the need to identify a distinct duty to pay the money now claimed—that is, one that is separate and distinct from the

13

Local Counsel Agreement (*see* ECF No. 36 at PageID. 549-50)—Lipton Law fails to identify such a duty.

Additionally, "Michigan law distinguishes between claims involving the alleged conversion of money and the alleged conversion of other property." *Kerrigan v. ViSalus, Inc.*, 112 F. Supp. 3d 580, 615 (E.D. Mich. 2015) (citing *Lawsuit Fin., LLC v. Curry*, 683 N.W.2d 233, 241 (Mich. Ct. App. 2004); *Sudden Serv., Inc. v. Brockman Forklifts, Inc.*, 647 F. Supp. 2d 811, 815 (E.D. Mich. 2008)). "A claim for conversion of money is available only in very narrow circumstances." *Id.* Specifically, "[i]t is clear that when the dispute is over moneys owed, conversion is only applicable in cases involving money that is the property of one party but held by another party (e.g., bank accounts, trusts, etc.) which is then wrongfully taken." *Sudden Serv., Inc.*, 647 F. Supp. 2d at 815 (citations omitted); *see also Kerrigan*, 112 F. Supp. 3d at 615-16 (quoting *Head v. Phillips Camper Sales & Rental, Inc.*, 593 N.W.2d 595, 603-04 (Mich. Ct. App. 1999)) (explaining that "in order to state a claim for conversion of money, a plaintiff must allege that the defendant had 'an obligation to return certain specific money entrusted to his care'"). Lipton Law never entrusted specific money to Wagstaff's care. Instead, the parties entered an agreement whereby Wagstaff agreed to pay Lipton Law a fee for its legal services.

For these reasons, Wagstaff is entitled to summary judgment with respect to Lipton Law's conversion claims (Counts II and III).

### C. Unjust Enrichment/Quantum Meruit

Courts in Michigan use the terms "unjust enrichment" and "quantum meruit" interchangeably to refer to contracts implied in law. *See Daimler-Chrysler Servs. N.A., LLC v. Summit Nat'l, Inc.*, 289 F. App'x 916, 925 (6th Cir. 2008) (citations omitted). Michigan courts imply a contract when there is no express contract between the parties concerning the subject matter, the defendant received a benefit from the plaintiff, and the defendant's retention of that benefit will result in inequity to the plaintiff. *Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 796 (6th Cir. 2016) (citing *Fodale v. Waste Mgmt. of Mich., Inc.*, 718 N.W.2d 827, 841 (Mich. Ct. App. 2006); *Peabody v. DiMeglio*, 856 N.W.2d 245, 251 (Mich. Ct. App. 2014)). "[A] contract will not be implied if there is an express contract between the same parties on the same subject matter." *KSR Int'l Co. v. Delphi Auto. Sys., LLC*, 523 F. App'x 357, 363 (6th Cir. 2013) (citing *Morris Pumps v. Centerline Piping, Inc.*, 729 N.W.2d 898, 903 (Mich. Ct. App. 2006)).

Wagstaff argues that Lipton Law's unjust enrichment/quantum meruit claim fails because there is an express contract between the parties. Lipton Law maintains that there is no contract concerning its services above and beyond the original contract—i.e., for any work Lipton Law performed beyond filing the

15

complaint and moving for Dougherty's pro hac vice admission. As Lipton wrote in his email to Dougherty: "if we end up doing more than that, we will adjust. Deal?" (ECF No. 36-3 at PageID. 564.) To which Dougherty responded: "Sounds good, thanks!" (*Id*.) Lipton Law argues there was never a meeting of the minds with respect to what this adjustment would be and, therefore, quantum meruit is a viable claim.

Under Michigan law, parties may enter into an enforceable contract requiring the execution of another contract at a later date. *Pittman v. Experian Info. Solutions, Inc.*, 901 F.3d 619, 633 (6th Cir. 2018) (quoting *Opdyke Inv. Co. v. Norris Grain Co.*, 320 N.W.2d 836, 838 (Mich. 1982)) ("A contract to make a subsequent contract is not per se unenforceable; in fact, it may be just as valid as any other contract."). On one hand, "to be enforceable, a contract to enter into a future contract must specify all its material and essential terms and leave none to be agreed upon as the result of future negotiations." *Id.* (quoting *Heritage Broad. Co. v. Wilson Commc'ns, Inc.*, 428 N.W.2d 784, 787 (Mich. Ct. App. 1988)) (brackets omitted). On the other hand, "the lack of non-essential terms does not automatically invalidate the agreement." *Id*. (quoting *Trapp v. Vollmer*, No. 297116, 2011 WL 2423884, at *1 (Mich. Ct. App. June 16, 2011)) (brackets and alteration therein removed).

16

"An agreement may be enforced as a contract even though incomplete or indefinite in the expression of some terms, if it is established that the parties intended to be bound by the agreement, particularly where one or another of the parties has rendered part or full performance." *Id.* (quoting *J.W. Knapp Co. v. Sinas*, 172 N.W.2d 867, 869 (Mich. Ct. App. 1969)) (brackets omitted). "The open terms must be capable of being determined 'independent of a party's mere wish, will, and desire, either by virtue of the agreement itself or by commercial practice or other usage or custom.'" *Id.* (quoting *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 565 (7th Cir. 2012)) (additional quotation marks, citation, and ellipsis removed). "This may be the case, even though the determination is left to one of the contracting parties, if he is required to make it 'in good faith' in accordance with some existing standard or with facts capable of objective proof." *Id.* at 633-34 (quoting *Wigod*, 673 F.3d at 565).

While the express agreement between Wagstaff and Lipton Law did not contain the exact adjustment Lipton Law would receive for doing more work than Dougherty thought would be required in the Michigan Action, it does not fail for indefiniteness. Their expressions reflect an intent to be bound, and Lipton Law performed under their agreement. *See Gardiner, Kamya & Assocs., P.C. v. Jackson*, 369 F.3d 1318, 1322 (Fed. Cir. 2004) (quoting *Aviation Contractor Employees, Inc. v. United States*, 945 F.2d 1568, 1572 (Fed. Cir. 1991)) (explaining that "an

17

indefinite price term will not destroy the underlying mutuality of obligation when a contract indicates a clear intention by both parties to be bound. As to definiteness, when parties demonstrate a clear intention to be bound, 'an agreement which specifies that certain terms will be agreed on by future negotiation is sufficiently definite, because it impliedly places an obligation on the parties to negotiate in good faith.'"); 1 Corbin on Contracts § 4.1 (2024) ("If the parties have concluded a transaction in which it appears that they intend to make a contract, the court should not frustrate their intention if it is possible to reach a fair and just result, even though this requires a choice among conflicting meanings and the filling of some gaps that the parties have left."). What amount, if any, Lipton Law should be reimbursed for any "additional" work is not something the Court need decide here; and, in fact, it likely is a decision for a jury.

What the Court does decide here is that there is an express agreement between the parties concerning Lipton Law's work beyond the "mostly . . . administrative" work expected for the 5% local counsel fee. Given the existence of such a contract, Wagstaff is entitled to summary judgment on Lipton Law's unjust enrichment/quantum meruit claim (Count IV).

## IV. Conclusion

For the reasons set forth above, the Court holds that Wagstaff is not entitled to summary judgment with respect to Lipton Law's breach of contract claim,

although Wagstaff is entitled to summary judgment with respect to Lipton Law's remaining claims.

Accordingly,

**IT IS ORDERED** that Defendant Andrus Wagstaff, P.C.'s motion for summary judgment (ECF No. 34) is **GRANTED IN PART AND DENIED IN PART**.

                                                  s/ Linda V. Parker
                                                  LINDA V. PARKER
                                                  U.S. DISTRICT JUDGE

Dated: April 24, 2024